Merrimack
No. 88-377

### THE STATE OF NEW HAMPSHIRE

v.

### MARTIN O'BRIEN

December 29, 1989

*John P. Arnold,* attorney general (*Mark E. Howard,* attorney, on the brief, and *Tina Schneider,* assistant attorney general, orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.  After a bench trial in the Superior Court (*DiClerico,* J.), the defendant, Martin O'Brien, was convicted of driving a motor vehicle on the ways of this State while an habitual offender. RSA 262:23 (1982) (current version at Supp. 1988). He was sentenced to the minimum mandatory term of imprisonment required by statute, twelve months in the house of correction, but was granted weekly work release. The sentence was stayed pending this appeal, in which Mr. O'Brien claims that the trial court erred in ruling that the defense of competing harms, codified at RSA 627:3, was unavailable to him as a matter of law. Finding no error, we affirm the decision of the trial court.

The facts of this case are not in dispute. On July 27, 1987, the defendant's employer, Builders Insulation, located in Bedford, dispatched Mr. O'Brien and a co-worker, Douglas Frizzell, to a condominium construction site, on Fisherville Road in Concord. The two men were sent to inspect the project in order to insure that certain work had been completed satisfactorily. Mr. Frizzell drove a company truck to the site, as Mr. O'Brien had been adjudicated an habitual offender in December of 1983, *see* RSA 259:39 (1982) (current version at Supp. 1988), and, therefore, had lost his privilege to drive for a period of four years.

Upon their arrival at the project site, Mr. O'Brien went to look for a job supervisor while Mr. Frizzell entered a building in order to start the requisite inspection. Shortly thereafter, Frizzell got his foot caught between two boards, causing injury to his ankle. He returned to the truck and was there, holding his ankle and complaining of pain, when the defendant came back, having failed to locate a supervisor with whom to tour the area. Mr. O'Brien immediately determined that he should transport Frizzell to the hospital to have the apparently injured ankle examined. Within a matter of seconds, the two men were headed south on Fisherville Road, with O'Brien driving. Not more than one-half mile from the construction site, Concord Police Officer Kevin Ganley, using radar, clocked the defendant traveling at 48 miles per hour in a 30-mile-per-hour zone.

The defendant pulled over to the side of the road as soon as he saw the police cruiser's flashing blue lights. When asked for his driver's license and registration, Mr. O'Brien readily admitted to Officer Ganley that he was an habitual offender and, as such, did not have a license. He further explained, however, that he was driving an injured co-worker to the hospital. Officer Ganley then

checked to see if Mr. Frizzell needed an ambulance or some other form of assistance. Frizzell assured the officer that further assistance was unnecessary, although at trial he did testify that financial concerns regarding payment for an ambulance prompted this response. Once Officer Ganley received confirmation of O'Brien's habitual offender status, he arrested the defendant and charged him with operating a motor vehicle after being certified as an habitual offender.

At the trial of this matter, as soon as Douglas Frizzell finished testifying for the defense, the State moved to exclude his testimony, claiming that it was intended to support a competing harms defense and that the defense was not available to the defendant as a matter either of law or of fact. The trial court held the matter in abeyance until it had heard all the evidence. When the State renewed its motion at the close of the evidence, the trial court ruled that the evidence presented, viewed in the light most favorable to the defendant, did not meet the standards necessary to permit the use of the defense. It therefore granted the State's motion and, as the trier of fact, did not consider the competing harms defense in its decision.

The defendant raised three specific questions in his notice of appeal, two of which were accepted by this court. Only one issue, however, that of whether the trial court erred in ruling that the defense of competing harms was unavailable to the defendant as a matter of law, was actually briefed and argued by the defendant. We therefore limit our inquiry on appeal to this specific question.

The statute at issue in this case, RSA 627:3, "establishes a ... defense akin to the common-law defense of necessity," *State v. Dorsey*, 118 N.H. 844, 845, 395 A.2d 855, 856 (1978), and provides in relevant part that

> "[c]onduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged."

Accordingly, in situations where the competing harms doctrine applies, conduct which otherwise would constitute a crime is justifiable and, as such, is "a defense to any offense." RSA 627:1. The statute sets up a balancing test. In order for the defense to be available, the desire or need to avoid the present harm must outweigh the harm sought to be prevented by the violated statute.

█ Application of the defense, however, is "'limited to acts directed to the prevention of harm that is reasonably certain to occur,'" *State v. Fee*, 126 N.H. 78, 80, 489 A.2d 606, 607 (1985) (quoting *State v. Warshow*, 138 Vt. 22, 25, 410 A.2d 1000, 1002 (1979) (citing *State v. Dorsey*, 118 N.H. at 846, 395 A.2d at 857)), and is not intended "to justify acts taken to foreclose speculative and uncertain dangers," *id.* We have consistently held that "[a]n individual is protected from prosecution under the competing harms defense [only] if he commits a criminal 'act that was *urgently necessary* to avoid a *clear and imminent* danger.'" *State v. Fee*, 126 N.H. at 80, 489 A.2d at 607 (emphasis in original) (quoting *State v. Dorsey*, 118 N.H. at 847, 395 A.2d at 857). In addition, it is the law of this State that the defense "is not available to justify unlawful conduct when lawful alternatives exist which will cause less, if any, harm." *State v. Fee*, 126 N.H. at 80, 489 A.2d at 608. In sum, in order for the defense to be available, a number of requirements must be satisfied. The otherwise illegal conduct must be urgently necessary, there must be no lawful alternative, and the harm sought to be avoided must outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the violated statute.

With this in mind, we turn our attention to the current controversy. The defendant contends that he presented evidence tending to support a competing harms defense, and that the trial court, sitting as the trier of fact, was therefore obligated to consider it. We simply cannot agree. It is the province of the court to determine and decide questions of law. Clearly, in cases where the evidence is taken in the light most favorable to the defendant, and the minds of reasonable persons inevitably are led to the same conclusions, it is the duty of the court to dispose of the matter as a question of law. *See State v. Williams*, 127 N.H. 79, 497 A.2d 858 (1985) (trial court's refusal to give jury instruction on defense of competing harms in welfare fraud case affirmed); *State v. Fee*, 126 N.H. 78, 489 A.2d 606 (in bench trial, trial court's finding that the defense of competing harms was unavailable to the defendant affirmed); *State v. Dorsey*, 118 N.H. 844, 395 A.2d 855 (trial court's finding that competing harms defense was unavailable affirmed). In this case, the trial court ruled that the evidence presented on the issue of a competing harms defense was wholly insufficient to warrant its consideration. We agree and hold that no reasonable person, viewing the evidence in the light most favorable to the defendant, could have found that the legislature, through enactment of RSA 627:3, intended that the need to alleviate ankle pain

would outweigh the harm sought to be prevented by RSA 262:23, that of keeping habitual offenders from driving.

The action taken by Mr. O'Brien was not warranted by the situation and cannot be excused through application of the competing harms statute. He simply was not faced with a situation of the magnitude contemplated by RSA 627:3. Mr. Frizzell twisted his ankle. We note that he was able to walk without assistance from the actual place of injury back to the truck where he met Mr. O'Brien. Moments later, when Officer Ganley offered to summon an ambulance, Mr. Frizzell explained that it was only a sprained ankle. We further note that, after the defendant's arrest, Mr. Frizzell drove to the police station. He did not seek medical attention but, rather, waited approximately two hours at police headquarters for Mr. O'Brien to be processed. Once the defendant was released, Mr. Frizzell then drove them both back to Builders Insulation in Bedford. In fact, it was not until approximately four hours after Mr. Frizzell actually twisted his ankle that he finally went to "Med Stop" in Londonderry to have it examined. While we do not doubt that Mr. Frizzell was experiencing a certain amount of pain, a sprained ankle just does not demand the immediate action necessary to avoid a clear and imminent danger that is required by the statute.

"[E]ven if the defendant had reasonably believed an imminent danger existed, the conduct he chose was unjustified," *State v. Fee*, 126 N.H. at 81, 489 A.2d at 608, because a number of alternatives, short of breaking the law, were available to him. Mr. O'Brien testified that he made an immediate decision to drive Frizzell to the hospital and that he did not consider possible alternatives. The fact is, however, that there were alternatives. The accident occurred on a Monday morning. Commercial establishments were open; there were also a number of personal residences in the area. An individual in any one of these nearby buildings could have provided transportation assistance or the use of a telephone.

Without even considering any viable, lawful alternatives, and without even discussing the severity of the injury with Mr. Frizzell, the defendant decided to drive the injured man to the hospital. Although his motive for driving while an habitual offender may have been laudable, the statute is not meant to excuse illegal actions carried out with good intentions. "Good motives are not a defense to the commission of crime, except in a case of emergency not present here." *State v. Dorsey*, 118 N.H. at 847, 395 A.2d at 857.

■ Finally, with regard to the balancing test, the legislature, in enacting the habitual offender law, has declared it to be the policy of this State (1) to provide maximum safety for all persons using its highways; (2) to deny the privilege of driving motor vehicles to those who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for State laws; (3) to discourage repetition of criminal acts; and (4) to impose increased and added deprivation of the privilege to drive upon habitual offenders who have been convicted repeatedly of violations of traffic laws. RSA 262:18; *State v. Canney*, 132 N.H. 189, 192, 562 A.2d 1315, 1316 (1989); *State v. Ward*, 118 N.H. 874, 878, 395 A.2d 511, 513 (1978) (discussing RSA 262-B:1, the precursor to RSA 262:18); *State v. Bowles*, 113 N.H. 571, 572, 311 A.2d 300, 301 (1973) (also discussing RSA 262-B:1). "The primary purpose of the habitual offender statute is to foster safety," *State v. Dean*, 115 N.H. 520, 524, 345 A.2d 408, 411 (1975) (citing *State v. Bowles*, 113 N.H. at 574, 311 A.2d at 302), by removing "irresponsible drivers from the highways of the State," *State v. Bowles*, 113 N.H. at 574, 311 A.2d at 302. The legislature's concern for the habitual offender problem and its determination to rectify the situation is evidenced by the statutory minimum mandatory penalty of one year's incarceration for violation of RSA 262:23. It is the statute itself which mandates that anyone convicted of driving a motor vehicle while an habitual offender must "be sentenced to imprisonment for not less than a year nor more than 5 years." RSA 262:23. The legislature has made a deliberate choice to take a strong stand on this issue. It has determined that protection of the public by removing dangerous drivers from highways is a serious priority and that violators of the habitual offender law must be dealt with severely.

■ Even if Mr. O'Brien were able to meet the initial requirements necessary for invocation of the competing harms defense, the desirability and urgency of avoiding further pain from a sprained ankle does not outweigh the harm sought to be prevented by the habitual offender statute. No reasonable person could have found from the evidence presented, when taken in the light most favorable to the defendant, that application of the competing harms defense was warranted in this case. We therefore hold, as a matter of law, that the competing harms defense was not available to this defendant and that the trial court was correct in so ruling.

*Affirmed.*

All concurred.