Lester **SHRUM**, Appellant
(Defendant Below),

v.

**STATE of Indiana**, Appellee
(Plaintiff Below).

No. 49A04–9510–CR–401.

Court of Appeals of Indiana.

May 9, 1996.

---

R. Victor Stivers, R. Victor Stivers & Associates, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Lester Shrum appeals from his conviction for operating a motor vehicle after his driver's license was forfeited for life, a class C felony.

We affirm.

### ISSUE

Whether the trial court erred in failing to find an extreme emergency existed.

### FACTS

The facts most favorable to the trial court's judgment reveal that Shrum's driver's license had been forfeited for life. Shrum worked as a mechanic in an auto repair shop. Because Shrum had no driver's license, his boss would send an employee to pick Shrum up on days he was needed at work. Accordingly, on July 15, 1994, David Angel picked Shrum up for work. A few minutes after leaving Shrum's residence, Angel, who is a diabetic, stated that he felt shaky and queer and asked Shrum to drive him to the "nearest place to eat." (R. 103). Angel did not tell Shrum his condition constituted an emergency and Shrum was aware that Angel's life was not in danger.

Shrum, who had witnessed several of Angel's diabetic "seizures," knew that Angel needed sugar. Therefore, he decided to drive Angel to a nearby Village Pantry to obtain a soda and a candy bar. On the way to the Village Pantry, Shrum passed a Hardee's and a White Castle, both of which Shrum knew sold soda. Shrum also knew the White Castle sold orange juice which would have helped Angel's condition.

A block and a half away from the Village Pantry, Shrum was stopped by a police officer for driving a car with a loud muffler. The officer arrested Shrum after determining his driver's license had been forfeited. Neither man told the police officer that Angel was experiencing a health problem and neither requested assistance for that reason. Thereafter, Angel walked to the Village Pantry alone and obtained a soda and candy bar.

At the conclusion of Shrum's bench trial for operating a motor vehicle while his driver's license was forfeited for life, the trial court found as follows:

> Considering the evidence, I'm looking at [Ind.Code] 9–30–10–18, and, Mr. Shrum, that, that law provides that it's a defense if the operation of the motor vehicle was necessary to save life or limb, or in an

extreme emergency. While there is no case law for me to tell me what that means, the way I look at it is you have to drive the car to save life or limb in order for this defense to apply. And in the circumstance that we have here I don't dispute that, that your friend may have been in some trouble, but I do not find that the defense of extreme emergency necessary to save life or limb was proved in this case and, therefore, I must find you guilty as charged.

(R. 141–2).

## DECISION

Ind.Code 9–30–10–18 provides:

In a criminal action brought under section 16 or 17 of this chapter, it is a defense that the operation of a motor vehicle was necessary to save life or limb in an extreme emergency. The defendant must bear the burden of proof by a preponderance of the evidence.

■ Shrum argues the trial court erred in finding an emergency did not exist. Whether Shrum proved that his operation of the car was necessary was a question of fact for the trial court. As such, we will review it as any other sufficiency question. That is, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Geans v. State,* 623 N.E.2d 435, 437 (Ind.Ct.App.1993).

In support of his contention, Shrum directs our attention to a number of cases from other states—all of which involve defendants who drove while their driver's licenses were suspended, and all of which we find to be inapposite. For example, five cases conclude the trial court erred in failing to variously instruct the respective juries on the general doctrines of necessity, justification, competing harms, and/or choice of evil after the defendants had presented evidence on same. *See Tarvestad v. State,* 261 Ga. 605, 409 S.E.2d 513 (1991) (defense of justification); *State v. Cole,* 304 S.C. 47, 403 S.E.2d 117 (1991) (defense of necessity); *State v. O'Brien,* 132 N.H. 587, 567 A.2d 582 (1989) (defense of competing harms); *State v. Costanzo,* 94 Or.App. 516, 766 P.2d 415 (1988) (defenses of choice of evil and necessity);

*State v. Knowles,* 495 A.2d 335 (Me.1985) (defense of competing harms).

None of these defenses are at issue here and none are a specific statutory defense to driving while one's driver's license is suspended. Moreover, unlike the evidence presented by the defendants in the preceding cases, the evidence Shrum presented with respect to the defense found in I.C. 9–30–10–18 was, in fact, considered by the trier of fact, in this case, the trial court.

Similarly, the sixth case advanced by Shrum is not applicable to the issue here. In *State v. Ouellette,* 34 Conn.Supp. 649, 382 A.2d 1005 (Conn.Super.Ct.1977), the court concluded as a matter of law that, under the doctrine of necessity, the defendant's wife's need for prescription medicine did not justify the defendant having driven while his driver's license was suspended.

The final case submitted by Shrum, *State v. Brown,* 306 Or. 599, 761 P.2d 1300 (1988), although it involves a specific statutory defense to driving while one's driver's license has been suspended, is also inapplicable. In *Brown,* the court considered the following statutory defense in pertinent part:

(1) In addition to other defenses provided by law ... it is an affirmative defense to the offenses described in ORS 811.175 [driving while suspended or revoked] ... that:

(a) An injury or immediate threat of injury to a human being or animal, and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question[.]

*Id.* at 1301. Following the defendant's case in chief, the state moved to withdraw the statutory defense from the jury's consideration, arguing the defendant's evidence on the defense was insufficient. The trial court granted the state's motion and the defendant was convicted of driving while his driver's license was suspended.

On appeal, the court construed the word "injury" and the phrase "immediate threat of injury" as found in the statute and concluded "both the magnitude of the injury or threatened injury and the interval of time necessary to avert or remedy the injury are circumstances to be considered by the jury." *Id.* at 1304. After reviewing the testimony,

the court held "there was evidence on both elements of the defense; therefore, we hold that the trial court erred in withdrawing the defense from the jury's consideration." *Id.* at 1306.

Here, however, the language of I.C. 9–30–10–18 is dissimilar to the language of the statute at issue in *Brown.* Furthermore, and again, the evidence Shrum presented in his defense was considered by the trier of fact.

Specifically, Shrum argues that "[t]he trial court commit [sic] an error when it found that an extreme emergency did not exist ...," Brief of Appellant at 10, because "Shrum ... was faced with a compelling medical emergency that justified his driving and violation of the law. The emergency was that Angel, the original driver, was experiencing the onset of a diabetic attack." Brief of Appellant at 10.

■ When a statute is clear and unambiguous on its face, we may not interpret the statute. *Thompson v. Ferdinand Sesquicentennial Comm.,* 637 N.E.2d 178, 180 (Ind.Ct. App.1994). Rather, words are to be given their ordinary and plain meaning. *Id.*

■ Given the evidence described in the FACTS, we cannot say the circumstances with which Shrum was faced rise to the ordinary meaning of an "extreme emergency" which made it "necessary for him to save life or limb." There is no evidence Angel was so ill that he was close to death or that his life was in danger. Indeed, he did not even tell Shrum, or the police officer, that he was experiencing an emergent health condition. Furthermore, as the State aptly points out, Shrum had the opportunity to assist his friend without violating the law. Specifically, he could have walked to the nearby Hardee's, White Castle, or Village Pantry to obtain sugary foods—just as Angel ultimately did.

We must decline Shrum's invitation to reweigh the evidence in his favor. We find no error.

Affirmed.

CHEZEM and HOFFMAN, JJ., concur.