District Court for Southern Carroll County
No. 2003-242

THE STATE OF NEW HAMPSHIRE

v.

LAURENT L'HEUREUX

Argued: February 11, 2004
Opinion Issued: April 23, 2004

*Peter W. Heed,* attorney general (*Jonathan V. Gallo,* assistant attorney general, on the brief and orally), for the State.

*Brennan, Caron, Lenehan & Iacopino*, of Manchester (*Michael J. Iacopino* on the brief and orally), for the defendant.

NADEAU, J. Following a bench trial in the District Court for Southern Carroll County (*Varney*, J.), the defendant, Laurent L'Heureux, was convicted of operating a motor vehicle with an alcohol concentration of .08 or more. *See* RSA 265:82, I(b) (Supp. 2003). On appeal, the defendant argues that the trial judge erred in finding, as a matter of law, that the defense of competing harms was unavailable to him. *See* RSA 627:3 (1996). We vacate and remand.

The following facts were adduced at trial. On July 4, 2002, the defendant and his domestic partner, Laurie Cameron, visited Mr. and Mrs. Robinson and their two children for the weekend at a cottage they had recently acquired on Lake Winnipesaukee in Moultonborough. Mr. Robinson explained to the defendant that he had received a "terrific deal" on the house, at least in part, because his neighbor was a "nasty person." The cottage was located in a neighborhood with many other houses, and the area was crowded for the holiday weekend. Another couple and their two children were also visiting the Robinsons.

Early in the evening, the defendant consumed an alcoholic strawberry daiquiri. Later, sometime between 7:30 and 8:30 p.m., the Robinsons served dinner. The defendant drank wine with his meal. During dinner, the Robinson's neighbor, whose house was approximately fifty feet away, appeared on her deck brandishing an automatic weapon on her shoulder. The defendant jumped out of his chair, and said, "Jesus, what is she gonna do with that?" Mr. Robinson also stood up, approached the neighbor, and said, "Hey, what are you gonna do with that, shoot me?" The neighbor responded, "No, but I'll shoot your goddamn dog." The neighbor then put the weapon by her side and walked back into her house.

The defendant, frightened for his safety and that of others at the house, insisted that someone call the police. To avoid further problems with his new neighbor, Mr. Robinson "got into [the defendant's] face" and refused to let the defendant use his house phone to report the incident to the police. After a conversation with his wife and the defendant, Mr. Robinson agreed to confront the neighbor and discuss the situation. He approached the neighbor's house and spoke to her husband. Fifteen or twenty minutes later, Mr. Robinson explained to the defendant that the husband reprimanded his wife for her actions.

Dissatisfied that the danger had subsided, the defendant went to his car to retrieve his cell phone to call 911. After the defendant had connected to a 911 operator, Mr. Robinson appeared, reached into the car, and yanked

the cell phone away from the defendant. He then reentered his house with the phone. The defendant announced that he would not stay in the house, and asked Mr. Robinson to call for a taxi-cab so he could leave. Mr. Robinson made three attempts to call taxis, but each company was overbooked, and estimated it would take at least several hours to arrive.

The defendant, who was the least intoxicated of the group, took Cameron's keys and drove toward a nearby police station he had seen earlier. At approximately 11:00 p.m., as he was driving to the police station, the defendant noticed a police cruiser traveling in the opposite direction. The defendant flashed his lights to get the officer's attention, and the officer responded by turning around and pulling behind the defendant who had stopped in a nearby parking lot.

The officer approached the defendant's vehicle, and the defendant, still excited from the episode at the cottage, explained that he wanted to report a "gun incident." After hearing the defendant's description of the events, the officer called for backup, which was dispatched to the houses where the incident occurred. In talking to the defendant, the officer noticed that his eyes were glassy and bloodshot, his speech was slurred, and he had an odor of alcohol on his breath. The defendant performed poorly on several standard field sobriety tests, and admitted he was "probably too drunk to drive." The officer arrested the defendant for driving while intoxicated, brought him to the Moultonborough Police Department, and administered breathalyzer tests that registered a blood alcohol content of .11.

The State charged the defendant with driving while intoxicated and driving with excess alcohol concentration in violation of RSA 265:82, I(a) (Supp. 2003) and RSA 265:82, I(b), respectively. The defendant raised the defense of competing harms. The trial court credited the defendant's testimony, noting his honesty and sincerity in recounting the incident. The court found that the defendant presented sufficient evidence to show that a harm existed that a person of average sensibility would recognize. Next, the court applied an objective standard in ruling that the defendant must establish that there were no legal alternatives, "that the action [the defendant] took was the only one he could take."

The court determined that although the defendant pursued a number of legal alternatives, his decision to drive was not the only alternative remaining because there were other houses in the neighborhood and other residents in the vicinity. *Cf. State v. O'Brien*, 132 N.H. 587, 591 (1989). Given that other alternatives existed, the court ruled that as a matter of law, "the evidence produced would not permit [the defendant] to raise the competing harms defense." The judge concluded that because the defense was unavailable, the burden did not shift to the State to disprove it. Thus,

the court found the defendant guilty of violating RSA 265:82, I(b), and dismissed the remaining complaint.

On appeal, the defendant contends that the trial court erred by ruling, as a matter of law, that the defense of competing harms was unavailable to him; the defendant argues that by doing so the court impermissibly shifted the burden of proof onto him. He also contends that the evidence was insufficient to prove beyond a reasonable doubt that the harm he sought to prevent did not outweigh the harm sought to be prevented by RSA 265:82, I. The State argues that the trial court correctly ruled the defense unavailable as a matter of law. Thus, it contends that the trial court did not impermissibly shift the burden to the defendant, because the State was never required to disprove the defense beyond a reasonable doubt.

Our review of the trial court's legal conclusions is *de novo. State v. Wallace,* 146 N.H. 146, 148 (2001). We are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *In the Matter of Watterworth & Watterworth,* 149 N.H. 442, 445 (2003). Provisions of the Criminal Code are construed according to the fair import of their terms and to promote justice. RSA 625:3 (1996).

■ RSA 627:3, I, of the Criminal Code codifies the defense of competing harms, the common law equivalent to the defense of necessity. *O'Brien,* 132 N.H. at 589. It provides, in relevant part: "Conduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged." RSA 627:3, I. Accordingly, in situations where the competing harms doctrine applies, conduct which otherwise would constitute a crime is justifiable. *See O'Brien,* 132 N.H. at 590. We have summarized the requirements for the availability of a competing harms defense as follows:

> [First], [t]he otherwise illegal conduct must be urgently necessary, [second] there must be no lawful alternative, and [third] the harm sought to be avoided must outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the violated statute.

*Id.*

■■ When dissecting the *O'Brien* test, it is evident that the first two prongs of the analysis are derived from the first clause of RSA 627:3, I, whereas the last prong in *O'Brien* mirrors the second clause of RSA 627:3, I. Thus, to properly analyze a competing harms defense, we must first look

to the clause of RSA 627:3, I, stating, "Conduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, . . . ." Under this clause, conduct is "justifiable" only if it is "urgently necessary to avoid a clear and imminent danger." *Bernard*, 141 N.H. at 234 (quotation omitted). The defense is limited to acts directed to the prevention of harm that is reasonably certain to occur. *O'Brien*, 132 N.H. at 590. Acts taken to foreclose speculative and uncertain dangers are not justifiable. *Id.* Additionally, the defense is "not available to justify unlawful conduct when lawful alternatives exist which will cause less, if any, harm." *Id.* (quotation omitted).

Next, we analyze the second clause of RSA 627:3, I, whether the harm "outweigh[s], according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged." As the language of the provision indicates, we must balance objectively the desire or need to avoid the present harm and the harm sought to be prevented by the statute violated. *Id.* at 589.

■ ■ We also note that competing harms is a justification defense, which the legislature has established constitutes a defense to any offense. RSA 627:1 (1996); *Bernard*, 141 N.H. at 234; *O'Brien*, 132 N.H. at 589. As a defense, once the trial judge has determined that competing harms is not precluded as a matter of law, it must be submitted to the trier of fact for determination. *Cf. State v. Soucy*, 139 N.H. 349, 352-53 (1995). Moreover, once the defendant has established the availability of the defense, the State has the burden to prove beyond a reasonable doubt that the harm produced by violation of the statute "was not conduct believed by the defendant to be necessary to avoid harm to himself or another, where the harm perceived outweighs the harm sought to be prevented by the statute (this weighing to be measured objectively)." *Bernard*, 141 N.H. at 235; *see also* RSA 625:10, :11, III(c) (1996). In this case, the issue is whether the competing harms defense was "sufficiently brought into play," thus requiring its submission to the finder of fact. *Bernard*, 141 N.H. at 235.

The defendant contends that he presented evidence tending to support a competing harms defense, and that the trial court, sitting as the trier of fact, was therefore obligated to consider it. Here, the judge ruled as a matter of law that the "evidence produced would not permit [the defendant] to raise the competing harms defense." Thus, we must determine whether the judge erred in concluding as a matter of law that the competing harms defense was unavailable.

In explaining its ruling, the trial court stated that in order for the competing harms defense to be available, the defendant was required to show that there was "no lawful alternative" to the action he took. While the trial court determined that the defendant pursued a number of lawful alternatives, it concluded that his decision to drive was not the only alternative remaining because there were other houses in the neighborhood and other residents in the vicinity. The court noted that this created the "fatal flaw" in the defendant's effort to assert the defense.

The defendant challenges this ruling, arguing that he considered every option before deciding to drive his vehicle to the police station. In contrast, the State argues that the defendant had numerous alternatives short of driving his vehicle that he should have pursued. While we agree that the defendant may have had other legal alternatives available, that finding is not dispositive of the legal issue before the trial court.

In *O'Brien*, 132 N.H. at 590, we stated that in order for the competing harms defense to be available, one requirement that must be satisfied is that there be "no lawful alternative" to the otherwise illegal conduct. Here, the trial court, understandably, construed this statement literally, and determined in this case whether there was "no lawful alternative" available. We conclude that the trial court used the wrong legal standard when applying the second prong of the *O'Brien* test.

We have explained that it is the law of this State that the defense of competing harms is not available when lawful alternatives exist which will cause less, if any, harm than the otherwise illegal conduct. *Id.* We construe this requirement so as to promote justice, *cf.* RSA 625:3, and in accord with the holdings of courts in other jurisdictions, we conclude that in order for a lawful alternative to be "available" to the defendant, it must be reasonable. *See Andrews v. People*, 800 P.2d 607, 610 (Colo. 1990).

In this case, by inquiring whether there was "no lawful alternative" available, no matter how unreasonable any such alternative might be, the standard imposed by the trial court was too high. The trial court determined whether no lawful alternatives to the illegal conduct existed, rather than whether no *reasonable*, lawful alternatives existed.

Accordingly, we vacate and remand for application of the correct legal test by the trial court. We express no opinion as to whether the evidence, viewed in the light most favorable to the defendant, would support a finding that there were no reasonable, lawful alternatives that would cause

less, if any, harm—we leave to the trial court the application of the correct legal standard in the first instance.

*Vacated and remanded.*

DALIANIS and DUGGAN, JJ., concurred.