**Phillip G. CAIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 30A04–0509–CR–00538.

Court of Appeals of Indiana.

April 4, 2006.

---

Bonnie K. Wooten, Carthage, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellant, Phillip Cain, following a jury trial, was convicted of operating a motor vehicle after having his driving privileges suspended, a Class D felony.[1] He was sentenced to two years in jail, and his driver's license was suspended for life. Upon appeal, Cain claims that although he was driving while his license was suspended, his was an "extreme emergency" situation as provided for under Indiana Code § 9–30–10–18 (Burns Code Ed. Repl.1997), and his conviction was therefore in error.[2]

We affirm.

On November 19, 2003, Cain accompanied his friend, Tony Thomason, who was driving from Indianapolis to New Castle to attend the funeral for Thomason's daughter, who Thomason testified had been murdered. Thomason testified that he had known Cain, who was living with him at the time, for fifteen to sixteen years. Bobby Bozer,[3] a neighbor of Thomason whom Thomason had known for two or three months, also accompanied them to the funeral. The three left at approximately 9:00 a.m. in Thomason's Chevrolet Suburban and arrived in New Castle approximately forty-five to fifty minutes later. They went to Thomason's mother's home before going to the funeral. Thomason took two "nerve pills" at the funeral home. Following the funeral and burial, they returned to Thomason's mother's home for approximately four to five hours. Thomason testified that he drank from twelve to

---

1. Ind.Code § 9–30–10–16 (Burns Code Ed. Supp.2003). The actual verdict found Cain "Guilty of Habitual Traffic Violator." Transcript at 71. We would observe that pursuant to I.C. § 9–30–10–4 (Burns Code Ed. Supp. 2003), being determined to be a habitual violator is a status which gives rise to cause for suspension of driving privileges. It is not, however, a separate independent offense. The parties stipulated that on the date in question Cain was driving a motor vehicle and was a habitual traffic violator.

2. Cain presents no issue as to any alleged defect as to the form of the verdict or as to the precise offense for which he was convicted.

3. The record contains several different spellings of this individual's name.

eighteen beers during this time. Thomason further testified that Bozer also drank alcohol. According to Thomason, Cain drank only coffee. At approximately 9:00 p.m. that evening, Thomason left his mother's house with Cain and Bozer to return to Indianapolis. Thomason testified that his mother was concerned about his leaving, but that he insisted upon it because he felt he was fine. Thomason, who was driving, testified that he remembered the drive clearly until he got to Interstate 70. At some point on I–70, approximately halfway between the Knightstown exit and the Greenfield exit, Thomason testified that he "scared [him]self to death" because he had no idea how fast he was going, was crossing lanes, and had run his vehicle off the road a couple of times. Transcript at 47. Thomason pulled to the side of the road and told Cain to drive. He then got into the back seat and passed out within minutes. Thomason testified that had he been in a normal state of mind, he would have known that Cain's license was suspended, but that this was the "furthest thing from [his] mind at the time," and that he wanted to put his vehicle in the "hands of the man [he] trusted," namely Cain, because he "didn't know [Bozer] well enough to be able to tell him to drive [his] truck home." Tr. at 48. Thomason also testified that if Cain had refused to drive his vehicle, he would have continued driving, and given his belief that he was a danger, it was a necessity for Cain to drive. Thomason admitted that there were businesses with pay phones close to both the Knightstown and Greenfield exits and that he could have driven to an exit and called for help.

Indiana State Trooper Aaron Gaul testified that on the evening of November 19, 2003, he initiated a traffic stop of a speeding Chevrolet Suburban at approximately the ninety-eight mile marker of I–70. Upon approaching the vehicle from the passenger side, Officer Gaul observed three males in the Suburban. Cain was driving, Bozer was in the passenger seat, and Thomason was lying in the back seat. Officer Gaul testified that Thomason was unresponsive and that the odor of alcohol emanated from the passenger compartment of the vehicle. Officer Gaul asked Cain for his driver's license, and Cain informed him that it had been suspended. Officer Gaul returned to his car and confirmed Cain's identity and the status of his license as suspended. Officer Gaul testified that Cain had informed him of the circumstances causing him to drive. Officer Gaul, who had detected the smell of alcohol in the car, tested Cain and determined he had not had any alcohol. Officer Gaul arrested Cain. Officer Gaul also tested Bozer and determined that his alcohol content was .02 and that he was capable of driving. Bozer apparently had a suspended license as well, but his was a lesser degree of suspension than was Cain's. Rather than wake Thomason, who Bozer and Cain feared could be combative, Officer Gaul permitted Bozer to drive the Suburban, apparently with a police escort, away from the scene to the nearest gas station where he called someone to pick them up.

Upon appeal, Cain claims that his actions fall under the definition of "extreme emergency" under Indiana Code § 9–30–10–18 because although he drove in spite of his license suspension, it was for the sole purpose of preventing the obviously intoxicated Thomason from driving and posing a danger to himself and others.

Under Indiana Code § 9–30–10–18, an individual charged with driving while suspended has as a defense "that the operation of a motor vehicle was necessary to save life or limb in an extreme emergency." Section 9–30–10–18 further provides

that "the defendant must bear the burden of proof by a preponderance of the evidence to establish this defense."

■ The determination of whether Cain proved that the operation of the car was necessary was a question of fact. *Shrum v. State,* 664 N.E.2d 1180, 1182 (Ind.Ct. App.1996). Cain's claim is therefore essentially a challenge to the sufficiency of the evidence.[4] *Moore v. State,* 702 N.E.2d 762, 763 (Ind.Ct.App.1998). Our standard of review of such a challenge is well-settled. *Id.* We consider the evidence most favorable to the verdict, along with all reasonable inferences to be drawn therefrom, in order to determine whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value supporting each element of the crime, we will not disturb the conviction. *Id.*

■ We conclude that there was substantial evidence to support Cain's conviction. The evidence supports the jury's finding that Cain was not in an extreme emergency situation such that operating a motor vehicle was necessary to save life and limb. While the circumstances surrounding the trip to New Castle may have been tragic, the jury was justified in concluding that Cain's return trip to Indianapolis was not an "extreme emergency" situation. Thomason's only reason for needing to return to Indianapolis the night of the funeral was that he had to go to work the next day. There was no evidence that Cain left unwillingly with Thomason, or that he was unaware of Thomason's consumption of a considerable amount of alcohol prior to the return trip. Moreover, once the men were on the road, they had alternatives to continuing to drive. Testimony indicated that there were businesses along I–70 where Thomason could have pulled over and called for help. In fact, Thomason testified he had just passed the Knightstown exit when he decided to pull over. Once the men had stopped by the side of the road, Cain again had alternatives. He could have suggested that Bozer[5] drive. If Thomason would not let Bozer drive, Cain could have sat in the car until Thomason passed out. He could have left for help on foot or flagged down another driver. Other than the fact that the men were trying to get back to Indianapolis for another day's work, there is no evidence that time was of the essence in this situation such that Cain was justified in ignoring his license suspension. The jury was entitled to find unpersuasive Cain's claim that operating a motor vehicle was necessary under the circumstances in order to save life and limb. We may note that a different trier of fact might well have found the evidence of "emergency" persuasive, but such conclusion was not mandated. Accordingly, we conclude that the evidence supports the conviction.

---

4. Cain's argument upon appeal is that the definition of "extreme emergency" in Indiana Code § 9–30–10–18 "should be broadened to include those instances" where one drives in order to prevent an intoxicated person from driving. Appellant's Brief at 4.

5. We recognize that Bozer tested positive for a "very low level" of alcohol and that his license was also suspended, but as a lesser offense. Transcript at 30–31, 35. While we do not endorse allowing another person to drive under the influence of any alcohol or while under any type of suspension, these facts simply support the jury's determination that Cain was not in an extreme emergency.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and DARDEN, J., concur.