**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 05 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**C. ROBERT RITTMAN**
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID L. LACEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  27A02-1109-CR-846 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable Mark E. Spitzer, Judge
Cause No.  27C01-1105-FC-284

**July 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

David Lacey appeals his conviction and sentence for operating a motor vehicle while privileges are forfeited for life, a class C felony.[1]

We affirm.

## ISSUES

1. Whether the trial court abused its discretion in refusing a tendered jury instruction.

2. Whether Lacey's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

## FACTS

On the night of May 28, 2011, on-duty Marion Police Officer Kyle Griffith stopped at a stoplight behind Lacey's vehicle. Lacey's music was so loud that Officer Griffith's windows were vibrating; he could not hear his police radio; and his "rearview mirror was vibrating so violently, the cars behind [him] were blurry." (Tr. 23). Officer Griffith therefore initiated a traffic stop. Officer Griffith twice "had to tell [Lacey] to turn the music down [be]cause [he] could not hear" Lacey. (Tr. 24).

When Officer Griffith requested Lacey's driver's license, Lacey told him that he had "left it at home." (Tr. 25). Officer Griffith therefore gave dispatch Lacey's information to "check his driving status . . . ." (Tr. 25). Dispatch informed Officer Griffith that Lacey was an "habitual traffic violator for life," which Officer Griffith verified through a print out from the Bureau of Motor Vehicles. (Tr. 25). Accordingly,

---

[1] Ind. Code § 9-30-10-17.

2

Officer Griffith had Lacey step out of his vehicle and placed Lacey under arrest. After Lacey informed Officer Griffith that he had a knife on his person, Officer Griffith removed a switchblade from Lacey's pocket. Officer Griffith also administered a field sobriety test and performed a breath test after observing an open container of alcohol in Lacey's vehicle. After placing Lacey in his police vehicle, Officer Griffith searched Lacey's vehicle, whereupon he discovered approximately one gram of marijuana in the glove compartment.

At no time did Lacey inform Officer Griffith that he was having a medical emergency or that he needed medical attention. Prior to transferring custody of Lacey to the Grant County Jail staff, Officer Griffith had to ask Lacey several standard questions. In response to the questions, Lacey indicated that he did not "need medical attention now[.]" (State's Ex. 5). Upon taking custody of Lacey, Grant County Sheriff's Deputy Brian Williams screened Lacey for medical problems by observing Lacey and asking Lacey a series of questions. Deputy Williams did not observe any medical problems and checked that Lacey responded "no" to the question, "Do you require immediate medical attention?" (State's Ex. 6). At no time did Lacey inform Deputy Williams that he was having chest pains or experiencing a medical emergency.

On May 31, 2011, the State charged Lacey with Count 1, class C felony operating a motor vehicle while privileges are forfeited for life; Count 2, class A misdemeanor possession of marijuana; and Count 3, class B misdemeanor possession of a knife with a blade that opens automatically. On August 4, 2011, the State and Lacey filed a

3

stipulation, whereby they stipulated that Lacey was driving a motor vehicle on May 28, 2011; Lacey's driver's license had been suspended for life on or about May 29, 1998; and that Lacey "knew his license was suspended for life when he drove the vehicle on May 23, 2011." (App. 27).

The trial court held a jury trial on August 8, 2011. Lacey testified that he had been diagnosed with blocked arteries in March of 2011 and was on heart medication. He further testified that on the night of May 28, 2011, he was home when he began experiencing chest pains. He therefore asked his stepdaughter to drive him to the hospital; however, she refused because she did not want to wake her four-year-old son. Lacey testified that he drove himself in his stepdaughter's vehicle.

According to Lacey's testimony, he informed Officer Griffith that he "was on [his] way to Marion General" and was "having chest pains." (Tr. 73). Officer Griffith then asked Lacey to lower the music's volume. Lacey complied but did not repeat his concerns regarding his chest pains. Lacey testified that he later informed Deputy Williams that he was having chest pains and "probably needed to go to Marion General." (Tr. 74).

Lacey's stepdaughter also testified. She testified that Lacey had asked to borrow her car the night of May 28, 2011, but did not tell her that he "was having chest pains or that he was having a medical problem or thought he was having a heart attack[.]" (Tr. 92). The jury found Lacey guilty on all counts.

4

The trial court ordered a pre-sentence investigation report ("PSI") and held a sentencing hearing on September 2, 2011. According to the PSI, Lacey had had numerous convictions over a period of thirty years, including eleven felony convictions and eight misdemeanor convictions. Lacey's prior criminal history included four convictions for driving while intoxicated; one conviction for operating a motor vehicle without a valid license; and a conviction for driving with a suspended license. The PSI further showed that Lacey had violated probation on six occasions. After considering aggravating and mitigating circumstances and finding that the aggravators outweighed the mitigators, the trial court sentenced Lacey to concurrent sentences of eight years on Count 1, one year on Count 2, and 180 days on Count 3.

DECISION

1. <u>Jury Instructions</u>

Lacey asserts that the trial court abused its discretion in refusing his tendered jury instruction on extreme emergency.

> "The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." "Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion." "In reviewing a trial court's decision to give or refuse tendered jury instructions," this Court "considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given."

*Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005) (internal citations omitted),

*trans. denied*.

> Before a defendant is entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict." An instruction error will result in reversal "when we cannot say with complete confidence that a reasonable jury would have rendered a guilty verdict had the instruction been given."

*Filice v. State*, 886 N.E.2d 24, 37 (Ind. Ct. App. 2008) (internal citations omitted), *trans.*

*denied*.

Regarding the defense of "extreme emergency," the trial court instructed the jury

as follows:

> It is a defense to Count 1 that the operation of a motor vehicle was necessary to save life or limb, in an extreme emergency. The Defendant must bear the burden of proof by a preponderance of the evidence to establish this defense.
>
> A "preponderance of the evidence" means the greater weight of the evidence. Evidence is of the greater weight if it convinces you most strongly of its truthfulness. In other words, it is evidence that convinces you that a fact is more probably true than not true.
>
> A greater number of witnesses testifying to a fact on one side or a greater quantity of evidence introduced on one side does not necessarily amount to the greater weight of the evidence.

(App. 20).

The trial court refused Lacey's tendered instruction on "extreme emergency."

That instruction read as follows:

6

Indiana law does not specifically define the term "extreme emergency." If you find after consideration of all the circumstances of this case, that David Lacey reasonably believed that he was at risk to either die, or to suffer serious physical impairment, had he not operated the motor vehicle, then he will have met his burden to establish his defense.

(App. 26).

Lacey argues that the tendered instruction was necessary to "adequately cover the issue as to whether [he] reasonably believed he was dealing with an extreme emergency." Lacey's Br. at 5. We disagree.

Indiana Code section 9-30-10-18 provides that in a criminal action brought under section 17 of chapter 10, "it is a defense that the operation of a motor vehicle or motorized bicycle was necessary to save life or limb in an extreme emergency. The defendant must bear the burden of proof by a preponderance of the evidence to establish this defense." The determination of whether a defendant has proven that the operation of the car was necessary is a question of fact. *Cain v. State*, 844 N.E.2d 1063, 1066 (Ind. Ct. App. 2006).

Where, as here, a statute is clear and unambiguous on its face, we may not interpret the statute. *Shrum v. State*, 664 N.E.2d 1180, 1183 (Ind. Ct. App. 1996) (discussing Indiana Code section 9-30-10-18). Rather, the words are to be given their ordinary and plain meaning. *Id.*

Furthermore, "where terms are in general use and can be understood by a person of ordinary intelligence, they need not be defined" by jury instructions. *Roche v. State*, 690 N.E.2d 1115, 1128 (Ind. 1997). Only terms that have a technical meaning or may be

7

misapplied by the jury should be defined by the trial court's instructions. *See McNary v. State*, 428 N.E.2d 1248, 1251 (Ind. 1981). Like the terms "malice" or "in sudden heat," the term "extreme emergency" neither has a technical meaning nor is one that may be misapplied or misunderstood by the jury. *See, e.g., McFarland v. State*, 271 Ind. 105, 390 N.E.2d 989, 994 (1979).

Here, the trial court's given instruction adequately instructed the jury as to the defense of "extreme emergency," and there is no evidence that the jury in this case misapplied the term "extreme emergency." Thus, we find no abuse of discretion in refusing to give Lacey's tendered instruction.

Moreover, we note that the evidence overwhelmingly supports the jury's verdict, and a reasonable jury would have rendered a guilty verdict on the count of operating a motor vehicle while privileges are forfeited for life even if Lacey's tendered instruction had been given. Accordingly, any error, if error at all, in the trial court's refusal of Lacey's tendered instructions is harmless and does not require reversal. *See Williams v. State*, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008) (finding harmless error in refusing the tendered instructions where the evidence clearly supported the convictions).

2. <u>Sentence</u>

Lacey asserts that his sentence is inappropriate. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). It is the defendant's burden to "'persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer v.*

*State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

In determining whether a sentence is inappropriate, the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Indiana Code section 35-50-2-6 provides that a person who commits a class C felony "shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." Thus, Lacey received the maximum sentence.

Here, Lacey argues that his sentence of eight years for operating a motor vehicle while privileges are forfeited for life is inappropriate in light of his character, namely because it is a "victimless crime and a non-violent crime." Lacey's Br. at 7. While this may be true, the record shows that Lacey has an extensive criminal history spanning thirty years, including several traffic offenses. Given Lacey's criminal history of convictions and probation violations, it is clear that he has a disregard for the law. We therefore cannot say that his sentence of eight years in the Department of Correction is inappropriate.

Affirmed.

NAJAM, J., and RILEY, J., concur.