**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General

**LYUBOV GORE**
Law Clerk
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DEMITRUS GRANT, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A02-1311-CR-959 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
The Honorable Anne Flannelly, Commissioner
Cause No. 49G04-1308-FC-50900

**June 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Demitrus Grant appeals his conviction of Class C felony operating a motor vehicle after his license was suspended for life.[1] He alleges his conviction was improper because he operated the motor vehicle during an "extreme emergency" as defined by In. Code §9-30-10-18. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 3, 2013, around 8:00 p.m., Indianapolis Metropolitan Police Department Officer Jason Norman was traveling southbound on Dr. Martin Luther King Street when he noticed a red Chevy Monte Carlo that was going forty-five miles per hour in a thirty-five miles per hour speed zone. He initiated a traffic stop when the Monte Carlo made an abrupt lane change without a proper turn signal. Grant, the driver of the car, pulled over.

Officer Norman approached Grant and asked for identification. Grant claimed he could not produce an ID, but he gave the name and identifying information of George Robey. Tyla Mays, the passenger, produced proper identification. Officer Norman looked up George Robey in the BMV database and the picture did not resemble Grant. Grant then confessed his real identity. Officer Norman ran Grant's information in the BMV database and determined Grant was a habitual traffic violator with a lifetime suspension of his license. Grant admitted he "knew he was not supposed to be driving." (Tr. at 88.)

Officer Brian Harvey arrived, and Mays told him she was Grant's girlfriend and they were heading to a hotel at the time of the stop. While Mays was with Officer Harvey, he

---

[1] Ind. Code § 9-30-10-17.

2

noted she winced in pain once. The officers offered multiple times to summon an ambulance, but Mays said she did not need an ambulance and she was capable of driving. After Mays was released with the car, she asked for directions to her hotel and returned there for the night.

Grant was arrested and charged with Class C felony operating a motor vehicle after his license was suspended for life. Grant raised the defense of "extreme emergency" under Ind. Code §9-30-10-18. A jury rejected the defense and found Grant guilty, and the court imposed a sentence of five years.

## DISCUSSION AND DECISION

Grant admitted he drove while his license was forfeited for life, but he asserted there was an "extreme emergency":

> In a criminal action brought under section 16 or 17 of this chapter, it is a defense that the operation of a motor vehicle was necessary to save life or limb in an extreme emergency. The defendant must bear the burden of proof by a preponderance of the evidence to establish this defense.

Ind. Code § 9-30-10-18.

Whether there was an "extreme emergency" was a question of fact for the jury, and we consider the evidence most favorable to the verdict. *Cain v. State*, 844 N.E.2d 1063, 1066 (Ind. Ct. App. 2006). In reviewing sufficiency of evidence, we will not reweigh evidence or judge credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We respect "the jury's exclusive province to weigh conflicting evidence." *Id.*

Grant testified he and Mays were on the way to St. Vincent's Hospital because they

3

had been at his cousin's hotel room when Mays began vomiting and complaining of sharp back pains for forty-five minutes. This concerned Grant because Mays was pregnant with his child and he feared something was going wrong with the pregnancy. Grant alleged he drove because he did not think Mays was capable.

When Grant was pulled over, he was driving away from two nearby hospitals, to which one would presumably go if an extreme emergency existed. Grant testified he was driving to St. Vincent's Hospital, which was thirty minutes away, rather than going to a closer hospital, because he did not trust the two nearby hospitals. However, the location where he was stopped was not on a direct route to St. Vincent's from Mays' hotel. Neither Grant nor Mays indicated to an officer at the scene of the traffic stop that an ambulance was needed or that there was an emergency. *See Shrum v. State*, 664 N.E.2d 1180, 1183 (Ind. Ct. App. 1996) (finding no extreme emergency when Shrum did not tell police his passenger was having a diabetic attack). Rather, Mays explicitly declined an offer to summon an ambulance, said she was capable of driving, and drove to her motel and then home to Ohio the next day. There was ample evidence to permit the jury to find Grant was not driving because of an extreme emergency.

## CONCLUSION

As there is sufficient evidence no extreme emergency existed, we affirm.

Affirmed.

KIRSCH, J., and BAILEY, concur.

4