# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0614, State of New Hampshire v. Steven Smith, the court on January 12, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The defendant, Steven Smith, appeals his conviction, following a jury trial in Superior Court (Brown, J.), on a misdemeanor charge of conduct after an accident for failing to stop at the scene of an accident and to provide the operator of a motorcycle he had struck with the information required by statute. See RSA 264:25, :29 (2014 & Supp. 2023). He argues that the evidence was insufficient to support his conviction. He further argues that the trial court erred by declining to instruct the jury on his competing harms defense. See RSA 627:3 (2016). We affirm.

We first address whether the evidence was sufficient to support the defendant's conviction. A challenge to the sufficiency of the evidence raises a question of law that we review de novo. State v. Seibel, 174 N.H. 440, 445 (2021). When considering a challenge to the sufficiency of evidence to support a conviction, we objectively review the entire record, construing the evidence, and all reasonable inferences from it, in the light most favorable to the State, and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. Id. We examine each item of evidence in the context of the entire case, not in isolation. Id. The trier of fact is entitled to draw reasonable inferences from the facts proved as well as from facts found as the result of other inferences so long as they can reasonably be drawn therefrom. See id. This standard applies if the proof at trial consisted of both direct and circumstantial evidence, and we will uphold the defendant's conviction under it unless we determine that no rational trier of fact could have found guilt beyond a reasonable doubt. Id.

RSA 264:25, I, provides, in relevant part:

> The driver of a vehicle who knows or should have known that he or she has just been involved in any accident which resulted in . . . damages to property, shall immediately stop such vehicle at the scene of the accident and give to the driver or owner of any other vehicle involved in said accident . . . and to the owner of any property damaged, the driver's name and address, the driver's license number, the driver's or owner's insurance provider and

policy information, if applicable, the registration number of the vehicle, and the name and address of each occupant.

Failure to comply with this provision constitutes a misdemeanor. RSA 264:29. "The criminal conduct proscribed under RSA 264:25, I, takes place only <u>after</u> an accident has occurred; the crime is not the accident itself." <u>State v. Pinault</u>, 168 N.H. 28, 33 (2015).

The defendant was charged with violating RSA 264:25, I, when he failed to immediately stop and provide the required information to the operator of a motorcycle after he struck the operator and caused damage to the motorcycle. On appeal, the defendant argues that there was no evidence that the motorcycle was, in fact, damaged as a result of the collision. The defendant acknowledges that he did not raise this argument in his motion to dismiss at the close of the State's case. Nevertheless, he invites us to reverse his conviction on plain error grounds if his motion to dismiss was not adequate to preserve the argument. <u>See</u> <u>Sup. Ct. R.</u> 16-A; <u>State v. Guay</u>, 162 N.H. 375, 380-84 (2011) (holding that defendant's conviction on aggravated felonious sexual assault charge in the absence of sufficient evidence of penetration amounted to a plain error affecting the defendant's substantial rights). Regardless of whether the defendant adequately preserved the argument, we conclude that the evidence was sufficient, as a matter of law, to establish that he caused damage to the motorcycle and, thus, that there was no error. <u>See</u> <u>Guay</u>, 162 N.H. at 381-84 (determining that insufficient evidence to support defendant's conviction was "error" for purposes of plain error test).

A witness for the State testified that on May 13, 2021, he was stopped at a red light in his BMW sedan heading southbound on South Willow Street at the intersection with Interstate 293 in Manchester. There was a lot of traffic both behind and around the driver of the BMW, including a large group of motorcyclists. The driver heard "quite a bit of beeping coming from the light behind" him, and observed a Subaru "approaching and going through traffic," beeping whenever any vehicle became an "obstacle," and "driving erratically through" the group of motorcyclists. The driver of the Subaru was the defendant. The driver of the BMW observed the defendant strike a motorcyclist, causing the motorcyclist to jump off the motorcycle and the motorcycle to fall onto its side. The driver of the BMW then observed the defendant drive over the tires of the fallen motorcycle and maneuver around other vehicles and into a turn lane to Interstate 293 before side-swiping the BMW. The defendant did not stop after striking the motorcyclist.

When the defendant's Subaru was directly next to the BMW, both the defendant's window and the BMW's window were down, and the driver of the BMW looked at the defendant and told him through the open windows that he needed to pull over because he had just hit the BMW, and had also hit the motorcyclist. The defendant simply responded, "F off," continued to drive

forward in the turn lane, but rather than turn onto the highway, he swerved back into the lane heading southbound on South Willow Street and went through the red light at a high rate of speed. When the light turned green, the driver of the BMW and a number of the motorcyclists followed the defendant for a distance on South Willow Street. The defendant then slowed as if he were going to turn into a fire station at which point the driver of the BMW thought he was intending to exchange information, so the driver of the BMW also tried to pull into the fire station, but the defendant then drove into the BMW causing it to go onto a median, strike a pole, and to be "totaled."

At that point, several motorcyclists arrived, surrounded the Subaru, pulled the defendant out of it, and began to assault him before firefighters were able to separate the defendant from the motorcyclists. The driver of the BMW likewise punched the defendant. A Manchester police officer who investigated the incident testified that he "ha[d] occasion to look at a motorcycle that was reported to have been involved in this," and that "[t]here was some slight damage to the mirror and the body . . . of the motorcycle."

Although the defendant was charged with several crimes arising out of these events, the only crime he was convicted of that survived his motion for judgment notwithstanding the verdict was the charge alleging that he violated RSA 264:29 by hitting the motorcyclist and not immediately stopping to provide information. On appeal, he argues that the evidence was insufficient to establish that he damaged the motorcycle because: (1) the driver of the BMW did not describe any damage to the motorcycle; (2) the investigating police officer did not specify which of the motorcycles "involved in this" was the motorcycle with "slight damage to the mirror and the body," did not further describe what the "slight damage" was, and did not describe any damage to the Subaru that was consistent with the "slight damage" to the motorcycle; and (3) no other witness described any damage to any motorcycle. We disagree.

Although there were multiple motorcyclists "involved" in the pursuit and confrontation with the defendant, there was testimony about only a single motorcycle "involved" in a collision throughout the entire sequence of events. Specifically, the driver of the BMW observed the defendant collide with only one motorcyclist, resulting in that motorcycle falling over and the defendant driving over that motorcycle's tires. Consistent with the BMW driver's description of that collision, the investigating officer testified that he observed the condition of "a motorcycle that was reported to have been involved in this," and that the motorcycle had "slight damage to the mirror and the body." Because this testimony includes direct observations by the witnesses, we reject the defendant's argument that it is solely circumstantial. See State v. Kelley, 159 N.H. 449, 454 (2009) (defining direct evidence).

Having heard this testimony, the jury reasonably could have inferred that the officer's observations were of the same motorcycle involved in the

3

collision, and that the damage to the motorcycle's mirror and body resulted from it falling onto its side and the defendant then driving over its tires. Viewing the evidence in context and in the light most favorable to the State, therefore, we conclude that a rational jury could have found, beyond a reasonable doubt, that the defendant's collision with the motorcycle caused damage to it. See Seibel, 174 N.H. at 445.

We next address whether the trial court erred by declining to give a competing harms instruction with respect to the misdemeanor conduct after an accident charge. "Competing harms" is a justification defense, codified by RSA 627:3, which the legislature has established as a defense to any criminal offense. RSA 627:1 (2016); see State v. L'Heureux, 150 N.H. 822, 826 (2004). Once the trial court determines that competing harms is not precluded as a matter of law, it must submit the defense to the trier of fact, and the State bears the burden to prove, beyond a reasonable doubt, "that the harm produced by violation of the statute was not conduct believed by the defendant to be necessary to avoid harm to himself or another, where the harm perceived outweighs the harm sought to be prevented by the statute (this weighing to be measured objectively)." L'Heureux, 150 N.H. at 826 (quotation omitted). The trial court "must grant a defendant's requested jury instruction on a specific defense if there is 'some evidence' to support a rational finding in favor of it," meaning "more than a minutia or scintilla of evidence." State v. Cavanaugh, 174 N.H. 1, 7 (2020).

RSA 627:3, I, provides:

Conduct which the actor believes to be necessary to avoid harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged. The desirability and urgency of such conduct may not rest upon considerations pertaining to the morality and advisability of such statute, either in its general or particular application.

For the defense to be available, the following elements are required: "First, the otherwise illegal conduct must be urgently necessary, second there must be no lawful alternative, and third the harm sought to be avoided must outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the violated statute." L'Heureux, 150 N.H. at 825 (quotation and brackets omitted). Conduct is "justifiable" under this statute "only if it is urgently necessary to avoid a clear and imminent danger," and thus the defense is "limited to acts directed to the prevention of harm that is reasonably certain to occur." Id. at 826 (quotation omitted). The defense "is not available to justify unlawful conduct when lawful alternatives exist which will cause less,

4

if any, harm," and "[a]cts taken to foreclose speculative and uncertain dangers are not justifiable" under RSA 627:3, I. Id. (quotation omitted).

The defendant argues that the trial court erred by declining to instruct the jury under RSA 627:3, I, with respect to the misdemeanor conduct after an accident charge because there was some evidence supporting his belief that driving to the fire station was urgently necessary to avoid harm to him from the motorcyclists and driver of the BMW who pursued him and, ultimately, assaulted him. We disagree.

The relevant criminal conduct occurred after the defendant collided with the motorcyclist in stopped traffic when the defendant did not immediately stop and provide the required information to the motorcyclist. RSA 264:25, I; see Pinault, 168 N.H. at 33. Instead of stopping immediately, the defendant continued to drive erratically through the stopped traffic, side-swiped the BMW, told the driver of the BMW to "F off" when the BMW driver directed him to pull over, maneuvered around the stopped traffic through a turn lane, and then sped through the traffic light at a high rate of speed. It was only at that point, after the defendant committed the crime and attempted to evade those whom he had just hit, that a pursuit ensued. Even when viewed most favorably to the defendant, see State v. O'Brien, 132 N.H. 587, 590 (1989), the evidence does not support a belief by the defendant, beyond speculation, that, when he initially collided with the motorcyclist, he was at any risk of danger if he complied with RSA 264:25, I.

Affirmed.

MacDonald, C.J., and Bassett, Hantz Marconi, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

5