2007 ME 57

**STATE of Maine**

v.

**Timothy A. NADEAU.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 16, 2006.

Decided: May 3, 2007.

Michael E. Povich, District Attorney, William B. Entwisle, Asst. Dist. Atty., Ellsworth, for the State.

Wayne R. Foote, Bangor, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

CALKINS, J.

[¶ 1] Timothy A. Nadeau appeals from a conviction for OUI (Class D), 29–A M.R.S. § 2411(1–A)(A) (2006) following a bench trial. Nadeau contends that the Superior Court (Hancock County, *Mead, J.*) erred as a matter of law in its analysis of the competing harms defense, 17–A M.R.S. § 103(1) (2006). We affirm the judgment.

## I. FACTS

[¶ 2] Around 9:30 P.M. on November 26, 2004, Timothy Nadeau went to a bar in Bucksport. While he was talking to an acquaintance named Janet, a stocky man approached Nadeau and identified himself as Janet's boyfriend. The boyfriend asked Janet if Nadeau was giving her any trouble. He then belligerently told Nadeau that they should take it outside to resolve the matter. Shortly thereafter, Nadeau concluded his conversation with Janet. Over the course of the evening Nadeau had four drinks.

[¶ 3] Nadeau left the bar around 1:00 A.M. It was closing time, and there were ten to fifteen people and approximately fifteen cars in the bar's parking lot at that time. Two police officers watched the parking lot from their police cruisers about three hundred yards from the parking lot.

[¶ 4] Nadeau walked to his car in the parking lot to retrieve his cell phone and gloves. He testified that he was intoxicated and that it was his intention to walk home. He further testified that as he walked toward his car, he noticed that Janet's boyfriend was leaving the bar with two friends, and they were rapidly walking in his direction. Nadeau picked up his pace and observed that the other men did likewise. Nadeau ran to his car, unlocked the door, and sat in the driver's seat, but before he could close the door, Janet's boyfriend reached in, grabbed Nadeau's arm, and tried to reach the steering wheel. When asked at trial what he thought was going to happen, Nadeau testified: "The man was angry. He had a bigger build than me. He had two friends with him. I thought that I was going to be pulled out of the car and pummeled, basically, and beaten up."

[¶ 5] Nadeau testified that the best way to extricate himself from the grip of Janet's boyfriend was to start the car and drive away to safety. By the time he had driven three to five feet, Janet's boyfriend had withdrawn his arm, and Nadeau was able to close the door.

[¶ 6] Nadeau proceeded to drive over a curb in the parking lot and drive onto Route 1, heading north toward the Irving gas station, where he was an employee. He testified that he did not feel safe in the parking lot. Nadeau testified that he did not try to use his cell phone to call for help, because his phone was turned off, the reception would have been poor anyway, and he was focused on driving safely. The police officers who were in their cruisers watching the parking lot did not notice any disturbance in the lot, but they saw Nadeau's vehicle drive over the curb and enter Route 1.

[¶ 7] Nadeau headed for the Irving station, which was about a mile north of the bar, as it was the closest place he could think of that would be open at that time of night. Nadeau testified that as he pulled onto Route 1, he noticed a vehicle directly

*Justice Howard H. Dana Jr. participated in the initial conference but retired before this opinion was certified.

behind him and feared that Janet's boyfriend had followed him. In fact, one of the police cruisers was behind him, as one of the officers had immediately pulled behind Nadeau's vehicle upon seeing him drive over the curb and leave the parking lot. The officer noticed that the speed of Nadeau's vehicle fluctuated between twenty-five and thirty-five miles-per-hour. Nadeau drove into the Irving station, as did the officer. Nadeau appeared shaken and upset, and he told the officer that he had been assaulted in the bar parking lot. The officer did not see any signs of physical injury, and he administered field sobriety tests to Nadeau, which Nadeau failed. The officer arrested Nadeau and took him to the police station. Nadeau's blood-alcohol content was 0.22%.

[¶ 8] Nadeau was charged with operating under the influence. He pleaded not guilty in the District Court, and following his demand for a jury trial, the case was transferred to the Superior Court. After several continuances, Nadeau withdrew his demand for a jury trial, and a bench trial was held. The State presented two witnesses: the arresting police officer and the other officer who had been watching the bar parking lot. Nadeau presented only himself as a witness, and his defense was the competing harms justification of 17–A M.R.S. § 103(1).

■ [¶ 9] Taking the evidence in the light most favorable to Nadeau, the court concluded that as a matter of law he had generated the competing harms defense.[1] Next, the court acting as the fact-finder found that the State had proved all of the elements of the offense of OUI and had

disproved the existence of the competing harm beyond a reasonable doubt. With regard to the competing harm justification, the court specifically found that Nadeau had alternatives available to him other than driving on Route 1 while under the influence. The three alternatives mentioned by the court included "[s]imply driving away within [the] parking lot," "honking the horn," and using his cell phone. The court found that Nadeau was justified in driving far enough within the parking lot to "distanc[e] himself from the accessible assailant" until he had reached a "zone of safety" within the parking lot. The court noted that Nadeau did not try his cell phone while he was still in the parking lot, nor did he "attempt[ ] to alert others to his predicament." The court concluded by saying: "I cannot find that his entering onto the highway while in an intoxicated state helps waive the harm which was sought to be prevented. In fact, the harm was prevented at that point." The court found Nadeau guilty and sentenced him to seventy-two hours in jail to be satisfied by completion of an alternative sentencing program, and imposed a fine of $500, and a ninety-day license suspension.

## II. DISCUSSION

### A. Standard of Review

■ [¶ 10] The only issue on appeal is whether the Superior Court erred in its application of the competing harms justification. The court concluded that Nadeau presented sufficient evidence to raise the defense, and we are not reviewing this conclusion. Instead, we are reviewing

---

1. Before the competing harms justification can be submitted to a fact-finder, there must be evidence that, if believed by the fact-finder, would constitute a justification under 17–A M.R.S. § 103 (2006) to the charged criminal conduct. *See State v. Soule*, 2001 ME 42, ¶ 10, 767 A.2d 316, 319. In other words,

there must be sufficient evidence on each of the elements of the competing harms defense. *See id.* At this stage, the trial court views the evidence in the light most favorable to the defendant to determine whether, as a matter of law, the defendant has presented sufficient evidence. *Id.* ¶ 11, 767 A.2d at 319.

whether the evidence was sufficient for the court's finding that the State disproved the competing harms defense beyond a reasonable doubt. If we were reviewing the court's decision as to whether the evidence was sufficient to generate the justification, we would review the evidence in the light most favorable to Nadeau. *See State v. York,* 2001 ME 30, ¶ 16, 766 A.2d 570, 575. In contrast, once a justification has gone to the fact-finder and the fact-finder finds that the State has disproved the justification, thereby rejecting it, we review the facts in the light most favorable to the State. *See id.* We review factual findings for clear error. *State v. Greenleaf,* 2004 ME 149, ¶ 13, 863 A.2d 877, 880.

■ [¶ 11] This case also requires us to examine the elements of the competing harms justification. Our review of the trial court's interpretation of a statute is de novo. *State v. Stevens,* 2007 ME 5, ¶ 5, 912 A.2d 1229, 1231.

## B. The Elements of the Competing Harms Defense

[¶ 12] The relevant portion of the competing harms statute states:

> 1. Conduct which the actor believes to be necessary to avoid imminent physical harm to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. The desirability and urgency of such conduct may not rest upon considerations pertaining to the morality and advisability of such statute.

17–A M.R.S. § 103(1).

■ [¶ 13] We have articulated the requirements of the competing harms statute in several ways without ever articulating all of the elements in a single case. A comprehensive review of our case law reveals that there are four elements of the defense: (1) the defendant or another person must be threatened with imminent physical harm, when viewed objectively, *see State v. Caswell,* 2001 ME 23, ¶ 12, 771 A.2d 375, 379; (2) the present conduct must be "for the purpose of preventing a greater harm," *State v. Collins,* 544 A.2d 312, 313 (Me.1988); or stated another way, the urgency of the present harm must outweigh the harm that the violated statute seeks to prevent, *State v. Moore,* 577 A.2d 348, 350 (Me.1990); (3) the defendant must subjectively believe that his conduct is necessary, *see State v. Kee,* 398 A.2d 384, 385–86 (Me.1979); and (4) the defendant must have no reasonable, legal alternatives to the conduct, *Moore,* 577 A.2d at 350.

[¶ 14] These four elements are similar to the elements found in the common law defense of necessity and in other jurisdictions' statutory defenses of competing harms or choice of evils. One commentator has identified the necessity defense in most jurisdictions as having four elements:

> (1) the defendant's illegal conduct was committed to avoid a significant evil or harm; (2) the defendant reasonably believed that her actions were necessary to avoid this evil; (3) the defendant had no alternative legal means of preventing this harm; and (4) the evil sought to be avoided is greater than the harm expected to result from the defendant's criminal offense.

Shaun P. Martin, *The Radical Necessity Defense,* 73 U. Cin. L. Rev. 1527, 1535–36 (2005).

[¶ 15] It is also useful to look at New Hampshire case law interpreting the requirements of the competing harms defense because our statute is based on the

New Hampshire statute.[2] The New Hampshire Supreme Court summarized the requirements of the competing harms defense as: "[1][t]he otherwise illegal conduct must be urgently necessary, [2] there must be no lawful alternative, and [3] the harm sought to be avoided must outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the violated statute." *State v. L'Heureux*, 150 N.H. 822, 846 A.2d 1193, 1196 (2004) (quoting *State v. O'Brien*, 132 N.H. 587, 567 A.2d 582, 584 (1989)). The New Hampshire statute also requires that the defendant's conduct be conduct that the defendant believes to be necessary to avoid the harm. N.H. REV. STAT. ANN. § 627:3 (1996).

[¶ 16] Thus, although the four elements of the Maine competing harms justification as described in our case law are not always clearly articulated as four elements, they are basically consistent with the requirements in other jurisdictions.

## C. The Analysis Applied to the Facts of this Case

■ [¶ 17] Here, the trial court first considered whether, as a matter of law, Nadeau had generated the competing harms defense. In its analysis, the court recognized that it had to view the evidence in the light most favorable to Nadeau, and it concluded that Nadeau had generated the competing harms defense.

[¶ 18] Once the court decided that as a matter of law the defense was generated, in this bench trial it then had to decide as a matter of fact whether the State disproved the defense beyond a reasonable

doubt. *See State v. Raubeson*, 488 A.2d 1379, 1380. The court found that the State had proved beyond a reasonable doubt that Nadeau reached a "zone of safety" while still in the parking lot. The court found that Nadeau was justified in driving within the parking lot in order to free himself from the boyfriend's grip and reach a "zone of safety." The court found that once Nadeau reached a "zone of safety," he had reasonable alternatives to avoid an assault before driving onto Route 1. Specifically, the court found that Nadeau had the reasonable alternatives of honking his horn to alert other patrons who were leaving the bar or of using his cell phone. There was evidence that there were approximately fifteen other cars and ten to fifteen people in the parking lot at the time Nadeau drove away. Although Nadeau testified that cell phone reception in that area was not good, the court was not compelled to believe him, particularly in light of Nadeau's testimony that he did not try the cell phone and that he had gone to his car in the first place to retrieve his cell phone and gloves. The evidence was sufficient for the fact-finder to conclude that the State had proved beyond a reasonable doubt that Nadeau had reasonable alternatives available to him that did not involve illegal conduct. Stated another way, the evidence was sufficient for a finding that the State had disproved beyond a reasonable doubt that Nadeau lacked reasonable, lawful alternatives to driving on Route 1 while intoxicated.

[¶ 19] Nadeau appears to argue that his subjective belief that it was necessary for

---

**2.** The Maine competing harms statute, section 103, was derived from the New Hampshire Criminal Code. 17-A M.R.S.A. § 103 comment (2006). The New Hampshire competing harms statute, in turn, codified the common law defense of necessity. *State v. L'Heureux*, 150 N.H. 822, 846 A.2d 1193, 1196 (2004).

The only substantive change that the drafters of the Maine Criminal Code made to the New Hampshire statute was by adding, in the first sentence, the words "imminent physical" to modify "harm to himself or another." *Compare* 17-A M.R.S. § 103 *with* N.H. REV. STAT. ANN. § 627:3 (1996).

him to drive to the Irving station on Route 1 while under the influence in order to avoid the assault is enough. In other words, he contends that his subjective belief trumps the requirement of no reasonable alternatives and trumps the requirement that the harm he was avoiding must outweigh the harm of his conduct. For this proposition, Nadeau relies on the following paragraph in *State v. Kee:*

> Defendant misreads the "competing harms" statutory provision. That defense is not in play merely because a defendant subjectively believes that a threat of imminent physical harm to person or property exists; it is further requisite that it be shown as a fact that such physical harm is imminently threatened. *If,* here, defendant confronted circumstances which *in fact* threatened "imminent physical harm to himself or another", defendant's contention would be correct that his subjective belief as to the particular course of conduct "necessary" to prevent the occurrence of that physical harm would not be open to further question on grounds of whether it met ordinary standards of reasonableness.

398 A.2d at 385–86 (emphasis in original) (footnote omitted). Nadeau interprets *State v. Kee* to mean that it is up to the defendant to determine what conduct is necessary to avoid the harm and so long as the defendant subjectively believes that the conduct is necessary, the conduct does not have to be reasonable. However, because the only issue in *State v. Kee* was whether there was any evidence of imminent danger of physical harm, the last sentence in the quotation is dictum.

[¶ 20] There is no question that under section 103 a defendant must hold a subjective belief that his conduct is necessary to prevent the physical harm. A defendant's subjective belief that the conduct is necessary, however, does not eliminate the requirement that no other reasonable, legal alternatives exist. We do not conclude that *State v. Kee* stands for the proposition that a defendant's subjective belief that his conduct is necessary does away with the requirement that there be no reasonable alternatives.

[¶ 21] Furthermore, the statement in *State v. Kee* that a defendant's subjective belief is not "open to further question on grounds of whether it met ordinary standards of reasonableness," cannot be considered to override the element that a defendant's conduct at all times must involve a lesser harm than the harm he is avoiding and that such weighing or evaluation is subject to "ordinary standards of reasonableness." 17–A M.R.S. § 103. Nadeau's subjective belief that he had to travel a mile on Route 1 to the Irving station, while intoxicated, has to be weighed against the harm he is fleeing. The quoted paragraph in *State v. Kee* does not eliminate the requirement of weighing the reasonableness of the defendant's conduct against the harm that the defendant is seeking to avoid.

[¶ 22] Viewing the evidence in the light most favorable to the State, the evidence was sufficient for the court to find that the State disproved beyond a reasonable doubt that Nadeau had reasonable alternatives available to him to avoid the threatened harm without having to drive a mile on Route 1 while under the influence.

The entry is:

Judgment affirmed.