2011 ME 118

**STATE of Maine**

v.

**Scott BROCKELBANK II.**

Supreme Judicial Court of Maine.

Argued: Oct. 13, 2011.
Decided: Nov. 29, 2011.

Arnold S. Clark, Esq. (orally), Ferris, Gurney & Crook, Waterville, for appellant Scott Brockelbank II.

Evert Fowle, District Attorney, Paul Rucha (orally), Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Scott Brockelbank II appeals from a judgment entered in the Superior Court (Kennebec County, *Mills, J.*) after a jury verdict convicting him of aggravated criminal trespass (Class C), 17–A M.R.S. § 402–A(1)(A) (2010), and assault (Class D), 17–A M.R.S. § 207(1)(A) (2010). He asserts that the evidence was insufficient to (1) disprove his competing harms defense and (2) establish that he committed aggravated criminal trespass. Brockelbank also appeals his sentence, contending that it was imposed in an illegal manner because the court considered information related to his nonpublic, juvenile record. *See* 15 M.R.S. § 3308(2) (2010). We affirm the judgment and the sentence.

## I. BACKGROUND

### A. Circumstances Surrounding the Trespass and Assault

[¶ 2] Viewing the facts in the light most favorable to the State, the jury could have found the following facts beyond a reasonable doubt. See *State v. Preston,*

2011 ME 98, ¶ 2, 26 A.3d 850; *State v. Nadeau*, 2007 ME 57, ¶ 10, 920 A.2d 452. At approximately 2:30 a.m. on December 6, 2009, Nicholas Doucette awoke to the sound of a woman screaming in the parking lot below his second-floor apartment in Waterville. When he looked out his window, he saw a man and a woman struggling. Thinking the woman was in trouble, Doucette grabbed an unloaded shotgun and went out onto his balcony, slid the pump action of the shotgun to gain the attention of the couple, held the shotgun across his chest, and threatened to call the police. An off-duty police officer who happened to be on the scene identified himself to Doucette, who subsequently lowered the shotgun, returned to his apartment, and put the gun away.

[¶ 3] Brockelbank was outside when he heard the screaming and ran toward the commotion. He testified that when he arrived at the parking lot Doucette was on his balcony with the gun lowered, although other witnesses testified that Doucette was back inside his apartment before Brockelbank arrived. Brockelbank's sister and her boyfriend were in the parking lot, but the man and woman who had engaged in the struggle had already left. Within seconds after his arrival, Brockelbank, accompanied by his sister's boyfriend, ran inside the building to Doucette's apartment, leaving his sister alone in the parking lot. They pounded on the door and Brockelbank kicked it open, breaking the doorframe and scattering debris across the room. Brockelbank charged at Doucette, tackled him to the ground, and punched him numerous times. Brockelbank and his compatriot left the apartment after Doucette began yelling to his roommate to get the gun.

## B. Trial and Sentencing

[¶ 4] Brockelbank was indicted for aggravated criminal trespass (Class C), 17–A M.R.S. § 402–A(1)(A), and assault (Class D), 17–A M.R.S. § 207(1)(A). He pleaded not guilty and was tried in September 2010. At the close of evidence, the jury was instructed on the competing harms defense, *see* 17–A M.R.S. § 103 (2010), and the State's burden to disprove the existence of the defense by proof beyond a reasonable doubt, *see* 17–A M.R.S. § 101(1) (2010). The jury returned a verdict of guilty on both charges.

[¶ 5] Brockelbank's sentencing was combined with his sentencing for a domestic assault conviction stemming from events that occurred prior to the incident in this case. The sentence for domestic assault is not at issue in this appeal. In his sentencing memorandum and again at the sentencing hearing, Brockelbank informed the court that he had received counseling for impulse control and anger management as a teenager, and requested that the court consider his willingness to re-engage in counseling as a mitigating factor in the court's sentencing analysis.

[¶ 6] In response, the State explicitly referred to Brockelbank's "juvenile record," without specifying the adjudication or adjudications to which it was referring. The prosecutor stated, "I don't care about the adjudications, I am more concerned that Mr. Brockelbank has a problem with his temper and that's what we keep seeing." The State asked that the court take this aspect of Brockelbank's juvenile history into consideration as evidence of character. Defense counsel objected on the ground that the State was improperly disseminating Brockelbank's juvenile history, in contravention of 15 M.R.S. § 3308(2).[1]

---

1. The State responded that the court should consider the information as it pertains to Brockelbank's character, arguing, "you are sentencing him for an assault, regardless of whether he was ever charged as a juvenile, the question becomes whether the Court can consider that. I understand what 3308 is,

The court ruled that it would consider the information for purposes of character only, and not as a prior conviction that might be used to enhance the sentence. The court otherwise made no mention of Brockelbank's juvenile history as a mitigating or aggravating circumstance in its three-part sentencing analysis.

[¶ 7] On the aggravated criminal trespass conviction, Brockelbank was sentenced to three years in prison, with all but six months suspended, and two years of probation with special conditions. On the assault conviction, he was sentenced to three months in jail, to be served concurrently with the first sentence, and a $300 fine. This appeal followed.[2]

## II. DISCUSSION

### A. Competing Harms Defense

[¶ 8] Brockelbank contends that the State failed to disprove his competing harms defense because there was insufficient evidence for the jury to find, beyond a reasonable doubt, that he did not believe his actions were necessary to avoid imminent physical harm to himself or a third party.

[¶ 9] The competing harms defense arises where there is evidence that a defendant believes his conduct was necessary to avoid imminent physical harm to himself or another:

> Conduct that the person believes to be necessary to avoid imminent physical harm to that person or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according

to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged.

17–A M.R.S. § 103(1). Once the defense is generated by the evidence, the State bears the burden of disproving it beyond a reasonable doubt. *See* 17–A M.R.S. § 101(1); *State v. LaVallee–Davidson,* 2011 ME 96, ¶ 13, 26 A.3d 828.

[¶ 10] In this case, the court instructed the jury on the competing harms defense, and no question is raised regarding the accuracy of the instruction. Thus, we consider only whether the State met its burden of disproving the defense. *See State v. Bard,* 2002 ME 49, ¶ 16, 793 A.2d 509. In finding Brockelbank guilty of aggravated criminal trespass, the jury implicitly found that the State had disproved the defense. "[O]nce a justification has gone to the fact-finder and the fact-finder finds that the State has disproved the justification, thereby rejecting it, we review the facts in the light most favorable to the State." *Nadeau,* 2007 ME 57, ¶ 10, 920 A.2d 452.

[¶ 11] There are four required elements to the competing harms defense: (1) the defendant or another person must be threatened with imminent physical harm, when viewed objectively; (2) the present conduct must be for the purpose of preventing a greater harm; or stated another way, the urgency of the present harm must outweigh the harm that the violated statute seeks to prevent; (3) the defendant must subjectively believe that his conduct is necessary; and (4) the defendant must have

---

you can't use it as an enhancement, if you will."

**2.** In his brief, Brockelbank raised additional issues related to the propriety of his sentence. Brockelbank also raised these issues in his application for leave to appeal his sentence pursuant to M.R.App. P. 20, which was denied by the Sentence Review Panel. Accordingly,

we do not address the issues regarding the propriety of Brockelbank's sentence. *See State v. Schmidt,* 2010 ME 8, ¶ 5, 988 A.2d 975 ("A sentence ... may be appealed directly as a matter of right when the defendant claims that the sentence is ... imposed in an illegal manner ... and the illegality appears plainly in the record.").

no reasonable, legal alternatives to the conduct.

*Id.* ¶ 13 (citations omitted) (quotation marks omitted). Accordingly, if the State disproves one of these elements, it has disproved the defense.

[¶ 12] Viewing the evidence in the light most favorable to the State, the record supports the jury's implicit finding that the State disproved at least one element of the competing harms defense. Doucette testified that he had not pointed his gun at anyone in the parking lot. Multiple witnesses, including Brockelbank, testified that by the time Brockelbank arrived on the scene, Doucette had already lowered the gun. Neither Brockelbank nor anyone else had seen Doucette point the gun at anyone. Additionally, Doucette testified that the off-duty police officer was still in the parking lot when he went back into his apartment. Based on this evidence, the jury rationally could have found beyond a reasonable doubt that the first element of the defense was not met because at the moment Brockelbank arrived on the scene, Doucette had already re-entered his apartment or, at most, was standing on the balcony holding his shotgun without pointing it at anyone; a police officer was on the scene and the dispute between the couple had cooled down; and Doucette posed no objectively imminent threat of physical harm.[3]

[¶ 13] There was also ample evidence from which the jury could have found beyond a reasonable doubt that Brockelbank had a reasonable legal alternative to breaking into Doucette's apartment and attacking him. *Id.* ¶ 13. The evidence established that Brockelbank acted out of a belief that Doucette posed some general threat to Brockelbank's sister's well-being.

If Brockelbank harbored that belief, he and his sister could have simply entered her apartment or walked away from the area.

[¶ 14] "The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." *State v. Filler,* 2010 ME 90, ¶ 24, 3 A.3d 365 (quotation marks omitted). Thus, the jury was entitled to believe whatever testimony it found credible in reaching its finding on the competing harms defense. Because there was sufficient evidence for the jury to find that the State disproved at least one of the elements of the defense, there was sufficient evidence to disprove the defense in its entirety.

B. Information Pertaining to Juvenile Adjudication Considered at Sentencing

[¶ 15] Brockelbank argues that his sentence was illegally imposed because the court improperly considered evidence relating to his juvenile record, in violation of 15 M.R.S. § 3308(2). "We review questions of law de novo, ... including the legality of a sentence ... and the interpretation of a statute[.]" *Alexandre v. State,* 2007 ME 106, ¶ 14, 927 A.2d 1155.

[¶ 16] With certain exceptions not relevant here, juvenile proceedings involving offenses that would be Class D or E crimes if the juvenile involved were an adult are not open to the public. *See* 15 M.R.S. § 3307(2)(A), (B) (2010). Section 3308(2) establishes that as to those juvenile cases in which the hearings are open to the public, portions of the court record are also open to the public:

**Hearings open to public.** In the case of a hearing open to the general public

---

**3.** For the same reason, we reject Brockelbank's related argument that there was insufficient evidence for the jury to conclude beyond a reasonable doubt that he knew that he was not licensed or privileged to enter Doucette's dwelling—an element of aggravated criminal trespass. *See* 17-A M.R.S. § 402-A(1).

under section 3307, the petition, the record of the hearing and the order of adjudication are open to public inspection, provided that any court subsequently sentencing the juvenile after the juvenile has become an adult may consider only murder and Class A, Class B and Class C offenses committed by the juvenile. The petition, the record of the hearing and the order of adjudication are open to inspection by the victim regardless of whether the hearing is open to the general public under section 3307.

15 M.R.S. § 3308(2). Read together, sections 3307 and 3308(2) establish that, in those juvenile proceeding in which hearings are not open to the public, the court record—including the petition, hearing record, and order of adjudication—is also not open to the public, and a court may not consider those offenses when later sentencing that juvenile as an adult. Brockelbank argues that because his juvenile adjudication was not one for which the hearing was open to the public, the sentencing court erred by considering information pertaining to that adjudication when sentencing him as an adult.

[¶ 17] While it is generally understood that section 3308 does not allow a sentencing court to consider the fact of an adult criminal defendant's nonpublic juvenile adjudication in order to enhance a sentence, *see United States v. Gray*, 177 F.3d 86, 92 (1st Cir.1999) (stating that section 3308 makes "certain juvenile adjudications (i.e., Class D or lower) off-limits for future proceedings"), we have not previously addressed the extent to which a sentencing court may consider information related to those adjudications when sentencing the defendant as an adult. The plain implica-

tion of subsection 2 is that "the petition, the record of the hearing and the order of adjudication" should not be considered by the sentencing court. 15 M.R.S. § 3308(2). Additional guidance is provided by subsection 5. 15 M.R.S. § 3308(5) (2010). It provides that other records consisting of "[p]olice records, juvenile community corrections officers' records and all other reports of social and clinical studies may not be open to inspection except with consent of the court" or unless the records were part of the record of a hearing that was open to the general public. *Id.* In addition, section 3310(6) unequivocally states: "An adjudication of the commission of a juvenile crime shall not be deemed a conviction of a crime." 15 M.R.S. § 3310(6) (2010).

[¶ 18] Because the Juvenile Code closes all records pertaining to nonpublic juvenile adjudications, but does not do the same for all records pertaining to a juvenile adjudication for more serious offenses that are open to the public, courts should generally not consider the information contained in nonpublic juvenile adjudication records when sentencing an adult offender. This view is supported by section 3308(2)'s legislative history, which establishes that the nonpublic/public divide should control the use of juvenile adjudication information when courts sentence adult offenders. *See* L.D.1951, Statement of Fact, at 9 (109th Legis.1980). The Statement of Fact for the enacted bill provides that section 3308(2) "clarifies the scope of an adult sentencing court's reliance on the prior juvenile record of the offender. It is consistent with publicity provisions in Title 15, section 3307."[4] *Id.*

[¶ 19] Thus, as a general matter, the State may not use records identified in

---

4. The relevant provision of section 3307 provides that the general public may not be excluded from certain juvenile proceedings, including those for murder or Class A, B, or C

offenses. 15 M.R.S. § 3307(2) (2010). Although the current language of the statute is *not identical to that in the 1980 bill, the*

subsections (2) and (5) of section 3308—or information derived from those records—related to a criminal defendant's nonpublic juvenile adjudication in support of its position at sentencing. This conclusion, however, does not end our inquiry. We must still determine whether it is error for the State to mention and the court to consider a nonpublic juvenile adjudication at sentencing when a defendant voluntarily provides information to the court related to the adjudication.

[¶ 20] The State, as justification for informing the court of Brockelbank's juvenile record, asserts that Brockelbank "argued in the sentencing memorandum that he had no juvenile record under section 3308(2) but produced a counseling record which the State believed was a required result of that unmentionable juvenile record." Brockelbank had provided the court with a letter from a social worker describing his clinical work with Brockelbank when Brockelbank was between the ages of sixteen and eighteen. The letter stated that the counseling's "primary focus was the development of emotional regulation skills." Thus, the State responded by providing additional information that asserted that Brockelbank's counseling resulted from his juvenile adju-

dication, which had arisen from Brockelbank's problem in controlling his temper.[5] Brockelbank did not dispute the State's assertion that the counseling was a requirement of the sentence imposed by the Juvenile Court.

[¶ 21] By voluntarily submitting information related to his nonpublic juvenile adjudication, Brockelbank, to a limited degree, waived the protection of the safe harbor that section 3308(2) and (5) affords information related to nonpublic juvenile adjudications. As we have recognized in the trial context, a defendant who "opens the door to testimony ... may not claim error in the admission of the line of questioning he initiated." *State v. Corrieri,* 654 A.2d 419, 421 (Me.1995). Applying this principle in the context of this case, the court acted within its discretion in permitting the State to introduce information related to Brockelbank's nonpublic juvenile adjudication to the limited extent reasonably necessary to respond to and explain information introduced by Brockelbank related to the same adjudication.

The entry is:

Judgment and sentence affirmed.

---

general thrust of the provision remains the same. *See* L.D.1951, §§ 16–17 (109th Legis.1980).

**5.** The State argued to the sentencing court that it was entitled to discuss the reason why Brockelbank had been in counseling, which it believed was a required result of the juvenile

record: "I think it is misrepresenting for [defense counsel] to come in and say, he has no record, or to come in and say, he has no problem and then saying when he is 16 he saw a counselor without you being able to understand why he went to see a counselor."